UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
In re:

APF GROUP, INC.,                                    Chapter 11
d/b/a A.P.F. MASTER FRAMEMAKERS,                    Case No. 09 B 23696 (RDD)
a/k/a APF MUNN,

                                    Debtor.
----------------------------------------------------------------X

# ORDER AUTHORIZING AND APPROVING SALE OF SUBSTANTIALLY ALL OF THE DEBTOR'S ASSETS FREE AND CLEAR OF LIENS, CLAIMS, AND ENCUMBRANCES TO AND THE ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS IN CONNECTION THEREWITH AND GRANTING RELATED RELIEF

**UPON** the motion dated January 12, 2011 (Docket No. __, the "Sale Motion"), of APF Group, Inc., the above captioned debtors and debtors-in-possession in the above-captioned Chapter 11 case (the "Debtor"), by its attorneys, Rattet, Pasternak & Gordon-Oliver, LLP, for entry of an order or orders (i) approving bidding procedures for the sale of substantially all of the Debtor's assets, (ii) approving an expense reimbursement, (iii) authorizing and approving, the sale of substantially all of the Debtor's assets, subject to higher and better offers, (iv) authorizing the assumption and assignment of certain executory contracts in connection therewith and (v) granting other related relief; and the Court having entered an *Order (I) Approving Bidding Procedures, (II) Approving and Expense Reimbursement, (III) Approving the Form and Manner of Notice and (IV) Scheduling an Auction and Sale Hearing* (Docket No. ___, the "Bidding Procedures Order"); and it appearing that the relief requested in the Motion is in the best interests of the Debtor's estates, its creditors, and other parties in interest; and it appearing that this Court

1

has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334; and it appearing that the Motion is a core proceedings pursuant to 28 U.S.C. § 157(b)(2); and adequate notice of the Motion and opportunity for objection having been given, and all objections to the relief requested in the Motion having been overruled, resolved by consent as specified herein; and this Court having heard statements of counsel and the evidence presented in support of the relief requested by the Debtor in the Motion at a hearing before this Court on January __, 2011 (the "Sale Hearing"); and it appearing that no other notice need be given; and it further appearing that the legal and factual bases set forth in the Motion and at the Sale Hearing establish just cause for the relief granted herein; and after due deliberation and sufficient cause therefor:

**THE COURT HEREBY FINDS AND CONCLUDES:**

A.  The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding under 28 U.S.C. Section 157(b)(2)(A), (M), (N) and (O).

B  Venue of this proceeding in this District and this Court is proper under 28 U.S.C. §§ 1408 and 1409.

C.  Adequate notice of the Motion and the proposed sale of assets and assumption and assignment of contracts has been given pursuant to Bankruptcy Rules 2002, 6004 and 6006. The Sale Motion, including a schedule of the amount (the "Cure Cost") asserted by the Debtors necessary to cure defaults under each respective contract and lease, and the Bidding Procedures Order were served on, among others, all of the Debtor's creditors, holders of interests in the assets of the Debtor, and all counterparties (the "Contract Counterparties") to executory contracts and unexpired leases of the Debtors. The service of such notices was good, sufficient and appropriate under the circumstances and no further notice need be given in respect of the

2

Motion, the auction, the Sale Hearing, the proposed sale of the Debtor's assets, assumption and assignment of executory contracts and unexpired leases of the Debtor or the cure amounts for such contracts and leases. Each of the Contract Counterparties have had an opportunity to object to the Cure Costs set forth in the Motion to Assume and Assign Contracts.

D. The Debtor has articulated good and sufficient reasons for this Court to grant the relief requested in the Motion, including, without limitation, adequate business justification for the sale of the Debtor's assets outside a plan of reorganization.

E. The Debtor has sufficiently marketed the Debtor's assets. Among other things, the Debtor caused the proposed sale and auction to be advertised in the Sunday Edition of the New York Times in accordance with the terms of the Bidding Procedures Order.

F. An auction was conducted on January __, 2011 in accordance with the Bidding Procedures approved in the Bidding Procedures Order. _____ ("_____" and together with its designee to be designated to take title to the assets to be purchased, the "Purchaser"), who had previously been designated as a Qualified Bidder in accordance with the Bidding Procedures, submitted the highest and best bid (the "Successful Bid") at the auction; and the Purchaser and the Debtor entered into an Asset Purchase Agreement (the "APA"),[1] dated January __, 2011 consistent with the terms of the Successful Bid. The auction process set forth in the Bidding Procedures Order, afforded a full, fair and reasonable opportunity for any person or entity to make a higher or otherwise better offer to purchase the Purchased Assets.[2] The Auction was duly noticed and conducted in a noncollusive, fair and good faith manner and a reasonable opportunity has been given to any interested party to make a higher

---

[1] A copy of the APA is annexed hereto as Exhibit "A".
[2] All capitalized terms used herein not otherwise defined shall have the meaning ascribed to them in the APA.

3

and better offer for the Purchased Assets.

G. The APA constitutes the highest and best offer for the Purchased Assets, and will provide a greater recovery for the Debtor's estate than would be provided by any other available alternative. The Debtor's determination that the APA constitutes the highest and best offer for the Purchased Assets constitutes a valid and sound exercise of the Debtor's business judgment.

H. The consideration provided by the Purchaser pursuant to the APA is fair and adequate and constitutes reasonably equivalent value and fair consideration under the Bankruptcy Code and under the laws of the United States, any state, territory or possession thereof and the District of Columbia.

I. The Purchaser is purchasing the Purchased Assets in good faith and is a good faith buyer within the meaning of section 363(m) of the Bankruptcy Code, and is therefore entitled to the full protection of that provision, and otherwise has proceeded in good faith in all respects in connection with this proceeding in that, *inter alia*: (i) the Purchaser is not an "insider" of the Debtor, as that term is defined in section 101(31) of the Bankruptcy Code; (ii) the Purchaser complied with the provisions in the Bidding Procedures Order and participated at the auction at which it significantly increased its initial Qualified Bid through numerous rounds of competitive bidding; (iii) no common identity of directors or controlling stockholders exists between the Purchaser and the Debtor; and (iv) the negotiation and execution of the APA was at arms' length and in good faith.

J. The Purchaser is not a mere continuation of the Debtor or its estate and there is no continuity between the Purchaser and the Debtor. The Purchaser is not holding itself out to the public as a continuation of the Debtor. The Purchaser is not a successor to the Debtor or its

4

estate and the sale does not amount to a consolidation, merger or de facto merger of the Purchaser and the Debtor. The sale of the Purchased Assets to the Purchaser is not being undertaken for the purpose of escaping liability for the Debtor's debts.

K. The Debtor has full corporate power and authority to execute and deliver the APA and all other documents contemplated thereby, and no further consents or approvals are required for the Debtor to consummate the transactions contemplated by the APA, except as otherwise set forth in the APA.

L. The transfer of each of the Purchased Assets to the Purchaser will be as of the Closing Date a legal, valid, and effective transfer of such assets, and vests or will vest the Purchaser with all right, title, and interest of the Debtor to the Purchased Assets free and clear of all Encumbrances accruing, arising or relating thereto any time prior to the Closing Date.

M. The Purchaser would not have entered into the APA and would not consummate the transactions contemplated thereby if the sale of the Purchased Assets to the Purchaser, and the assumption, assignment and sale of the Assumed Agreements to the Purchaser, were not free and clear of all Encumbrances of any kind or nature whatsoever, or if the Purchaser would, or in the future could be liable for any of such Encumbrances.

N. The Debtor may sell the Purchased Assets free and clear of all Encumbrances against the Debtor, its estates or any of the Purchased Assets because, in each case, one or more of the standards set forth in section 363(f)(1)-(5) of the Bankruptcy Code has been satisfied. Those holders of Encumbrances against the Debtor, its estate or any of the Purchased Assets who did not object, or who withdrew their objections, to the Motion are deemed to have consented thereto pursuant to section 363(f)(2) of the Bankruptcy Code. Those holders of such

Encumbrances who did object fall within one or more of the other subsections of section 363(f) and are adequately protected by having their Encumbrances, if any, in each instance against the Debtor, its estates or any of the Purchased Assets, attach to the cash proceeds of the sale ultimately attributable to the Purchased Assets in which such creditor alleges an interest, in the same order of priority, with the same validity, force and effect that such creditor had prior to the sale, subject to any claims and defenses the Debtor and its estate may possess with respect thereto.

O.     The assumption and assignment of the Assumed Agreements pursuant to the terms of this Order is integral to the APA and is in the best interests of the Debtor and its estate, creditors and other parties in interest, and represents the reasonable exercise of sound and prudent business judgment by the Debtor.

P.     The respective Cure Costs set forth on Exhibit A to the Sale Motion are the sole amounts necessary under sections 365(b)(1)(A) and (B) and 365(f)(2)(A) of the Bankruptcy Code to cure all monetary defaults and pay all actual pecuniary losses under the Assumed Agreements.

Q.     Pursuant to the terms of the APA, on the Closing Date or as soon as is reasonably practicable thereafter, the Purchaser shall have, by paying the Cure Costs: (i) cured and/or provided adequate assurance of cure of any monetary default existing prior to the Closing Date under any of the Assumed Agreements, within the meaning of section 365(b)(1)(A) of the Bankruptcy Code and (ii) provided compensation or adequate assurance of compensation to any party for actual pecuniary loss to such party resulting from a default prior to the Closing Date under any of the Assumed Agreements, within the meaning of section 365(b)(1)(B) of the Bankruptcy Code.

R. Given all of the circumstances of this Chapter 11 Case and the adequacy and fair value of the purchase price under the APA, the proposed sale of the Purchased Assets to the Purchaser pursuant to the APA (the "Sale") constitutes a reasonable and sound exercise of the Debtor's business judgment and should be approved.

S. The consummation of the Sale is legal, valid and properly authorized under all applicable provisions of the Bankruptcy Code, including, without limitation, sections 105(a), 363(b), 363(f), 363(m), 365(b) and 365(f), and all of the applicable requirements of such sections have been complied with in respect of the transaction.

**BASED UPON THE FOREGOING FINDINGS, IT IS HEREBY, ORDERED, THAT**

1. The findings set forth above and conclusions of law stated herein shall constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014. To the extent any finding of fact later shall be determined to be a conclusion of law, it shall be so deemed. To the extent any conclusion of law later shall be determined to be a finding of fact, it shall be so deemed.

2. All objections and responses concerning the Sale are resolved in accordance with the terms of this Order as set forth in the record of the hearing and to the extent any such objections were not otherwise withdrawn, waived or settled, they are hereby overruled and denied.

3. The relief requested in the Motion is granted and approved to the extent set forth herein.

4. The APA is hereby approved.

5. Pursuant to section 363(b) of the Bankruptcy Code, the Debtor is authorized, empowered and directed to (a) consummate the Sale of the Purchased Assets to the Purchaser pursuant to and in accordance with the terms and conditions of the APA, (b) close the sale as contemplated in the APA and this Order, and (c) execute and deliver, perform under, consummate, implement and close fully the APA, together with all additional instruments and documents that may be reasonably necessary or desirable to implement the APA and the Sale, including any other ancillary documents, or as may be reasonably necessary or appropriate to the performance of the obligations as contemplated by the APA and such other ancillary documents.

6. This Order shall be binding in all respects upon the Debtor, its estate, all creditors, all holders of equity interests in any Debtor, all holders of any Claim(s)[3] (whether known or unknown) against any Debtor, any holders of Encumbrances against or on all or any portion of the Purchased Assets, all Contract Counterparties, the Purchaser and all successors and assigns of the Purchaser, and any trustees, if any, subsequently appointed in any of the Debtor's Chapter 11 Case or upon a conversion to Chapter 7 under the Bankruptcy Code of the Debtor's case. This Order and the APA shall inure to the benefit of the Debtor, its estate and creditors, the Purchaser and their respective successors and assigns.

7. Pursuant to sections 105(a), 363(b), 363(f), 365(b) and 365(f) of the Bankruptcy Code, the Debtor is authorized to transfer the Purchased Assets on the Closing Date. Such Purchased Assets shall be transferred to the Purchaser "as is where is" with all faults in accordance with the APA upon and as of the Closing Date and such transfer shall constitute a legal, valid, binding and effective transfer of such Purchased Assets. Upon the Debtor's receipt of the Purchase Price, less the Contract Reserve, the Purchased Assets shall be free and clear of all

Encumbrances. Pursuant to section 363(f) of the Bankruptcy Code, the transfer of title to the Purchased Assets, including but not limited to the Assumed Agreements, shall be free and clear of any and all Encumbrances, including Encumbrances (i) that purport to give to any party a right or option to effect any forfeiture, modification, right of first refusal, or termination of the Debtor's interests in the Purchased Assets, or any similar rights, (ii) relating to taxes arising under or out of, in connection with, or in any way relating to the operation of the Purchased Assets prior to the Closing, and (iii) all debts arising in any way in connection with any agreements, acts, or failures to act, of any of the Debtor or any of the Debtor's predecessors or affiliates, Claims, obligations, liabilities, demands, guaranties, options, rights, contractual or other commitments, indemnities, indemnity obligations and warranties relating to any acts, omissions or circumstances arising prior to the Closing Date, including but not limited to Claims otherwise arising under doctrines of successor liability or any Claims or Encumbrances related to the Excluded Assets or the Excluded Liabilities. All Encumbrances shall attach solely to the proceeds of the Sale with the same validity, priority, force and effect that they now have as against the Purchased Assets, subject to any claims and defenses the Debtor and its estate may possess with respect thereto.

8. Except as expressly permitted or otherwise specifically provided by the APA or this Order, all Persons holding Encumbrances or interests in all or any portion of the Purchased Assets arising under or out of, in connection with, or in any way relating to the Debtor, the Purchased Assets, the operation of the Debtor's business prior to the Closing Date or the transfer of the Purchased Assets to the Purchaser, hereby are forever barred, estopped and permanently enjoined from asserting against the Purchaser or its successors or assigns, their property or the Purchased Assets, such Persons' or entities' Encumbrances in and to the Purchased Assets. On

---

[3] As defined in Section 101(5) of the Bankruptcy Code.

the Closing Date, each creditor is authorized and directed to execute such documents and take all other actions as may be necessary to release Encumbrances on the Purchased Assets, if any, as provided for herein, as such Encumbrances may have been recorded or may otherwise exist. The transactions authorized herein shall be of full force and effect, regardless of any Debtor's lack of good standing in any jurisdiction in which such Debtor is formed or authorized to transact business. Upon consummation of the transactions set forth in the APA, the Purchaser shall be authorized to file termination statements or lien terminations in any required jurisdiction to remove any record, notice filing, or financing statement recorded to attach, perfect or otherwise notice any lien or encumbrance that is extinguished or otherwise released pursuant to this Order under section 363 and the related provisions of the Bankruptcy Code.

9. All Persons are hereby forever prohibited and enjoined from taking any action that would adversely affect or interfere with the ability of the Debtor to sell and transfer the Purchased Assets to the Purchaser in accordance with the terms of the APA and this Order.

10. All Persons that are in possession of some or all of the Purchased Assets on the Closing Date are directed to surrender possession of such Purchased Assets to the Purchaser on the Closing Date.

11. A certified copy of this Order may be filed with the appropriate clerk and/or recorded with the recorder to act to cancel any of the Encumbrances of record.

12. If any Person which has filed statements or other documents or agreements evidencing Encumbrances on, interests in, all or any portion of the Purchased Assets shall not have delivered to the Debtors prior to the Closing Date, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, releases of liens and

easements, and any other documents necessary or desirable to the Purchaser for the purpose of documenting the release of all Encumbrances, which the Person or entity has or may assert with respect to all or any portion of the Purchased Assets, the Debtor is hereby authorized and directed, and the Purchaser is hereby authorized, to execute and file such statements, instruments, releases and other documents on behalf of such Person or entity with respect to the Purchased Assets.

13. This Order is and shall be binding upon and govern the acts of all Persons, including, without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal and local officials, and all other Persons who may be required by operation of law, the duties of their office, or contract, to accept, file, register or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to any lease; and each of the foregoing Persons is hereby directed to accept for filing any and all of the documents and instruments necessary and appropriate to consummate the transactions contemplated by the APA.

14. On the Closing Date and upon Purchaser's or Debtor's payment of the relevant Cure Costs, the Debtor is authorized and directed to assume and assign each of the Assumed Agreements (other than with respect to those contracts that the Debtor and the Purchaser have agreed to in writing by mutual consent with the counter-party on or prior to the Sale Hearing that are not subject to assumption and assignment) to the Purchaser free and clear of all Encumbrances, as described herein. The payment of the applicable Cure Costs (if any) by the Purchaser shall (a) effect a cure of all defaults existing thereunder as of the Closing Date and

(b) compensate for any actual pecuniary loss to such non-Debtor party resulting from such default. The Purchaser shall then have assumed the Assumed Agreements and, pursuant to section 365(f) of the Bankruptcy Code, the assignment by the Debtor of such Assumed Agreements shall not be a default thereunder. After the payment of the relevant Cure Costs by the Purchaser, neither the Debtor nor the Purchaser shall have any further liabilities to the Contract Counterparties other than the Purchaser's obligations under the Assumed Agreements that accrue and become due and payable on or after the Closing Date.

15. Any provisions in any Assumed Agreements that prohibit or condition the assignment of such Assumed Agreements or allow the party to such Assumed Agreements to terminate, recapture, impose any penalty, condition on renewal or extension or modify any term or condition upon the assignment of such Assumed Agreement, constitute unenforceable anti-assignment provisions that are void and of no force and effect. All other requirements and conditions under sections 363 and 365 of the Bankruptcy Code for the assumption by the Debtor and assignment to the Purchaser of the Assumed Agreements have been satisfied. On the Closing Date, in accordance with sections 363 and 365 of the Bankruptcy Code, the Purchaser shall be fully and irrevocably vested with all right, title and interest of the Debtor under the Assumed Agreements.

16. On the Closing Date and upon Purchasers' payment of the relevant Cure Costs, if any, the Purchaser shall be deemed to be substituted for the Debtor as a party to the applicable Assumed Agreements and the Debtor shall be relieved, pursuant to section 365(k) of the Bankruptcy Code, from any further liability under the Assumed Agreements.

17. Upon the payment of the applicable Cure Cost, if any, the Assumed Agreements

will remain in full force and effect, and no default shall exist under the Assumed Agreements nor shall there exist any event or condition which, with the passage of time or giving of notice, or both, would constitute such a default.

18. The Purchaser has provided adequate assurance of future performance under the relevant Assumed Agreements within the meaning of sections 365(b)(1)(C), 365(b)(3) (to the extent applicable) and 365(f)(2)(B) of the Bankruptcy Code.

19. There shall be no rent accelerations, assignment fees, increases or any other fees charged to the Purchaser or the Debtor as a result of the assumption and assignment of the Assumed Agreements.

20. Pursuant to sections 105(a), 363 and 365 of the Bankruptcy Code, all Contract Counterparties are forever barred and permanently enjoined from raising or asserting against the Debtor or the Purchaser any assignment fee, default, breach or Claim or pecuniary loss, or condition to assignment, arising under or related to the Assumed Agreements existing as of the Closing Date or arising by reason of the Closing.

21. Effective upon the Closing Date and except as otherwise provided by stipulations filed with or announced to this Court with respect to a specific matter, all Persons and entities are forever prohibited and permanently enjoined from commencing or continuing in any manner any action or other proceeding, whether in law or equity, in any judicial, administrative, arbitral or other proceeding against the Purchaser, its successors and assigns, or the Purchased Assets, with respect to any (a) Encumbrance arising under, out of, in connection with or in any way relating to the Debtor, the Purchaser, the Purchased Assets, or the operation of the Purchased Assets prior to the Closing of the Sale, or (b) successor liability, including, without limitation, the following

actions: (i) commencing or continuing in any manner any action or other proceeding against the Purchaser, its successors or assigns, assets or properties; (ii) enforcing, attaching, collecting or recovering in any manner any judgment, award, decree or order against the Purchaser, its successors, assets or properties; (iii) creating, perfecting or enforcing any Encumbrance against the Purchaser, its successors or assigns, assets or properties; (iv) asserting any setoff, right of subrogation or recoupment of any kind against any obligation due the Purchaser or its successors or assigns; (v) commencing or continuing any action, in any manner or place, that does not comply or is inconsistent with the provisions of this Order or other orders of this Court, or the agreements or actions contemplated or taken in respect thereof; or (vi) revoking, terminating or failing or refusing to issue or renew any license, permit or authorization to operate any of the Purchased Assets or conduct any of the businesses operated with the Purchased Assets.

22. Except for the Assumed Liabilities or as otherwise expressly set forth in this Order or the APA, the Purchaser shall not have any liability or other obligation of the Debtor arising under or related to any of the Purchased Assets. Without limiting the generality of the foregoing, and except as otherwise specifically provided herein or in the APA, the Purchaser shall not be liable for any Claims against the Debtor or any of its predecessors or affiliates, and the Purchaser shall have no successor or vicarious liabilities of any kind or character, including, but not limited to, any theory of antitrust, environmental, successor or transferee liability, labor law, de facto merger or substantial continuity, whether known or unknown as of the Closing Date, now existing or hereafter arising, whether asserted or unasserted, fixed or contingent, liquidated or unliquidated with respect to the Debtor or any obligations of the Debtor arising prior to the Closing Date. The Purchaser has given substantial consideration under the APA for the benefit of

14

the holders of any Encumbrance. The consideration given by the Purchaser shall constitute valid and valuable consideration for the releases of any potential Claims of successor liability of the Purchaser, which releases shall be deemed to have been given in favor of the Purchaser by all holders of Encumbrances against or interests in the Debtor or any of the Purchased Assets.

23. The transactions contemplated by the APA are undertaken by the Purchaser without collusion and in good faith, as that term is defined in section 363(m) of the Bankruptcy Code, and accordingly, the reversal or modification on appeal of the authorization provided herein to consummate the Sale shall not affect the validity of the Sale (including the assumption and assignment of the Assumed Agreements), unless such authorization and consummation of such Sale are duly stayed pending such appeal. The Purchaser is a good faith buyer within the meaning of section 363(m) of the Bankruptcy Code and, as such, is entitled to the full protections of section 363(m) of the Bankruptcy Code.

24. The proceeds of the Sale shall be held in escrow by Rattet, Pasternak & Gordon-Oliver, LLP as escrow agent subject to disbursement by further order of this Court; provided, however, that the proceeds of the Sale representing the Contract Reserve shall be held in escrow separately by Rattet, Pasternak & Gordon-Oliver, LLP as escrow agent and the disposition of the Contract Reserve shall be governed by the applicable terms of the APA.

25. Nothing contained in any plan of reorganization or liquidation, or order of any type or kind entered in (a) this Chapter 11 Case, (b) any subsequent chapter 7 case into which any such chapter 11 case may be converted, or (c) any related proceeding subsequent to entry of this Order, shall conflict with or derogate from the provisions of the APA or the terms of this Order.

26. Pursuant to Bankruptcy Rules 7062, 9014, 6004(h) and 6006(d), this Order shall be effective immediately upon entry and the Debtor and the Purchaser are authorized to close the Sale immediately upon entry of this Order.

27. No bulk sales law or any similar law of any state or other jurisdiction applies in any way to the Sale.

28. The failure specifically to include any particular provision of the APA in this Order shall not diminish or impair the effectiveness of such provision, it being the intent of this Court that the APA be authorized and approved in its entirety.

29. The APA and any related agreements, documents or other instruments may be modified, amended or supplemented by the parties thereto and in accordance with the terms thereof, without further order of this Court, provided that any such modification, amendment or supplement does not have a material adverse effect on the Debtor's estate.

30. This Court shall retain jurisdiction to, among other things, interpret, implement, and enforce the terms and provisions of this Order and the APA, all amendments thereto and any waivers and consents thereunder and each of the agreements executed in connection therewith to which the Debtor is a party or which has been assigned by the Debtor to the Purchaser, and to adjudicate, if necessary, any and all disputes concerning or relating in any way to the Sale.

31. To the extent that this Order is inconsistent with any prior order or pleading with respect to the Motion in this Chapter 11 Case, the terms of this Order shall govern.

32. To the extent there are any inconsistencies between the terms of this Order and the APA (including all ancillary documents executed in connection therewith), the terms of this Order shall govern.

Dated: White Plains, New York
January __, 2011

_____
HONORABLE ROBERT D. DRAIN
UNITED STATES BANKRUPTCY JUDGE